# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MELISSA R. REETZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>MIDLAND CREDIT MANAGEMENT LLC,<br><br>Defendants. | Case No.: 20-cv-277<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Melissa R. Reetz is an individual who resides in the Western District of Wisconsin (Dane County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes, namely a personal credit card account.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt Defendants sought to collect from Plaintiff was incurred as a result of a consumer transaction.

6. Defendant Midland Credit Management, Inc. ("MCM") is a foreign corporation with its principal place of business located at 3111 Camino Del Rio North, Suite 103, San Diego, CA 92108.

7. MCM is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. MCM is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Midland is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

9. Sometime prior to May 2019, Plaintiff defaulted on personal credit card accounts owed to Synchrony Bank.

10. The Synchrony account was a "JC Penney"-branded credit card account (the "JC Penney Account"). Plaintiff opened and used the account only for personal, family or household purposes, specifically personal purchases at JC Penney stores.

11. At some point after the account entered default and prior to April 30, 2019, Synchrony sold Reetz's JC Penney account to Midland Funding, LLC.

12. Sometime prior to April 30, 2019, Plaintiff entered into a payment plan with MCM to pay the JC Penney Account (the "Payment Plan"). As part of the Payment Plan, Plaintiff agreed to make periodic payments via monthly electronic, Automated Clearing House ("ACH") transactions, debit card, credit card, personal check, and/or money order, and authorized MCM to automatically initiate payments on a periodic basis.

13. MCM mailed Plaintiff a letter regarding the JC Penney Account on or around July 3, 2019. A copy of this statement is attached as Exhibit A.

14. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

15. Upon information and belief, Exhibit A is a form debt collection letter used to attempt to collect alleged debts.

16. Upon information and belief, the generation and mailing of letters in the form of Exhibit A with respect to payment plans like the Payment Plan is primarily automated.

17. Upon information and belief, when a consumer enters into a payment plan like the Payment Plan, an authorized representative of MCM inputs into MCM's computer system the payment schedule, including the payment amount and date for recurring payments.

18. Upon information and belief, after an authorized representative of MCM inputs the payment schedule specific to the consumer's payment plan into MCM's computer system, the system automatically initiates payments according to the schedule entered, with little or no further interaction necessary from MCM's representatives.

19. Upon information and belief, after an authorized representative of MCM inputs information specific to the Payment Plan into MCM's system, a computer or system of computers generates letters in the form of Exhibit A to consumers according to the predetermined schedule.

20. Upon information and belief, after an authorized representative of MCM inputs information specific to the Payment Plan into MCM's system, a computer or system of computers initiates the printing and mailing of letters in the form of Exhibit A to consumers according to the predetermined schedule.

21. Exhibit A is dated July 3, 2019.

22. Exhibit A states that the "electronic payment(s) will be automatically deducted from your credit/debit card ending in 4534," and that the consumer should "call at least 3 business days before the due date to cancel, change or modify your payment(s)."

23. Exhibit A further states that the "Payment Due Date" is July 8, 2019.

24. July 8, 2019 was a Monday.

25. Because July 4, 2019 was a federal holiday and July 6, 2019, and July 7, 2019 were Saturday and Sunday, respectively, three business days in advance of July 8, 2019 was July 2, 2019.

26. Assuming Exhibit A was mailed on July 3, 2019, there is no way a consumer could have received it "at least 3 business days before the due date."

27. Indeed, Exhibit A states that the consumer must contact MCM at least three business days in advance of the scheduled payment date to "cancel, change, or modify" a payment but was, itself, mailed fewer than three business days prior to the scheduled due date.

28. Further, it is axiomatic that a letter mailed three days prior to the scheduled payment date would not be received that day, and thus would be received fewer than three days prior to the scheduled payment date.

29. Thus, even assuming Exhibit A was mailed four business days prior to the scheduled due date, it would not have been received three business days prior to the scheduled due date. *See, e.g.,* https://www.usps.com/ship/first-class-mail.htm (describing First-Class Mail as providing "Delivery in 1-3 business days).

30. Plaintiff was confused by Exhibit A and did not know whether she could alter the payment arrangement at issue in Exhibit A at the time she received Exhibit A.

31. The unsophisticated consumer would be confused by Exhibit A.

4

32. Plaintiff had to spend time and money investigating <u>Exhibit A</u> and the consequences of any potential responses to <u>Exhibits A</u>.

### ***The FDCPA***

33. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before

and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

34.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

35. Misrepresentations of the character, amount or legal status of any debt, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

36. 15 U.S.C. § 1692e generally prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

37. 15 U.S.C. § 1692e(10) specifically prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

7

38. 15 U.S.C. § 1692f generally prohibits the use of any "unfair or unconscionable means to collect or attempt to collect any debt."

39. 15 U.S.C. § 1692f(2) specifically prohibits "the acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit."

### *The WCA*

40. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

41. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

42. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

43. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

44. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104. Further, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

45. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries, including any injury caused "by a violation of the federal consumer credit protection act" or any "false, misleading, deceptive, or unconscionable conduct in enforcing debts or security interests arising from consumer credit transactions." Wis. Stats. §§ 426.110(1) and 426.110(2); *see also* Wis. Stat. § 426.110(4)(e).

46. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

47. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*; *see also, Schmitz v. Valentine & Kebartas, LLC*, No. 18-cv-15, 2019 U.S. Dist. LEXIS 209489, at *6 (E.D. Wis. Dec. 5, 2019).

9

48. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

49. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct … in such a manner as can reasonably be expected to threaten or harass the customer."

50. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

51. The Wisconsin Department of Financial Institutions, which is tasked with the regulation of licensed debt collectors, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg. 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I – FDCPA

52. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

53. Exhibit A was mailed in connection with a payment instrument postdated more than five days and was mailed fewer than three business days prior to the date of the debt collector's intent to initiate payment.

54. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, and 1692f(2).

## COUNT II – WCA

55. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

56. <u>Exhibit A</u> was mailed in connection with a payment instrument postdated more than five days and was mailed fewer than three business days prior to the date of the debt collector's intent to initiate payment.

57. Defendants violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), and 427.104(1)(j).

## CLASS ALLEGATIONS

58. Plaintiffs bring this action on behalf of a class consisting of:

(a) all natural persons in the United States of America (b) who were sent a letter by Defendant, (c) in connection with a debt incurred for personal, family, or household purposes, where (d) the letter was mailed in connection with a previously scheduled periodic payment, (e) fewer than five business days prior the scheduled payment date, and (f) the letter was mailed between March 25, 2019 and March 25, 2020, inclusive, and (g) was not returned by the postal service.

59. Plaintiff also brings this action on behalf of a subclass, consisting of all Class members that are natural persons in the State of Wisconsin.

60. The Class and Subclass are each so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each of the Class and Subclass.

61. There are questions of law and fact common to the members of the Class and Subclass, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant violated the FDCPA and/or the WCA.

62. Plaintiff's claims are typical of the claims of the Class and Subclass members. All are based on the same factual and legal theories.

63. Plaintiff will fairly and adequately represent the interests of the Class and Subclass members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

64. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

65. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) injunctive relief;

(d) attorneys' fees, litigation expenses and costs of suit; and

(e) such other or further relief as the Court deems proper.

Dated: March 25, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com